UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VIRGINIA NORMAN,

        Plaintiff,

v.                                    Case No. 8:14-cv-01498-T-30MAP

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

Under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of the Commissioner's decision denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") payments.  Essentially, Plaintiff argues the administrative law judge ("ALJ") made multiple errors at every step of the sequential evaluation process, excluding step one.  She also argues the ALJ improperly evaluated Plaintiff's residual functional capacity ("RFC"), substituted his judgment for that of the medical experts, failed to state the weight afforded to each medical expert, improperly evaluated Plaintiff's subjective complaints, and failed to properly evaluate new evidence. I find each argument fails to provide reason for administrative remand.  Accordingly, I recommend this complaint be dismissed and the Commissioner's decision affirmed.[1]

_____

[1]  The district judge referred the matter to me for a report and recommendation. Local Rule 6.01(c)(21).

A.  *Standard of Review*

To be entitled to DIB or SSI, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  *See* 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated detailed regulations that are currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  Under this process, the Commissioner must determine, in sequence, the following:  (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (i.e., one that significantly limits her ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P;  (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform her past relevant work; and (5) if the claimant cannot perform the tasks required of her prior work, the ALJ must

2

decide if the claimant can do other work in the national economy in view of her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  A claimant is entitled to benefits only if unable to perform other work.  *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 404.1520(f), (g); 20 C.F.R. § 416.920(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted).  The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision.  *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

*B.  Background*

Plaintiff, who was forty-two years old at the time of her administrative hearing, has her general education diploma and work experience as a certified nursing assistant, cashier, and a food service worker (R. 176, 199).  She alleges she has been unable to work since April 22, 2010, due to her bipolar disorder, manic depression, anxiety, neck and back pain, carpel tunnel, migraines, blood clot in her neck, diabetic neuropathy, high blood pressure,

and acid reflux (R. 176, 199).[2]  The ALJ found some of these impairments "severe," but did

not specifically address them all.  Instead, he found at step two of the sequential analysis that

Plaintiff suffered from severe impairments of status post cerebrovascular accident ("CVA"),

diabetes mellitus, obesity, right foot drop, shoulder problems, angina, and disorders of the

spine;[3] none qualified as a listed impairment in C.F.R. Part 404, Subpart P, Appendix 1 (step

three) (R. 46, 52).  At step four, he assessed Plaintiff retained

> the residual functional capacity ("RFC") to perform light
> work . . . except she could never claim ladders, ropes,
> scaffolds, ramps, or stairs; she could not be exposed to
> hazardous machinery or vibrating machinery; she could only
> occasionally reach overhead bilaterally; she must work on flat
> level ground; and she cannot operate foot pedals, [which
> allowed her to perform her past relevant work as a cashier].

(R. 52, 58).  As such, the ALJ found the Plaintiff was not disabled (R. 59).  Plaintiff

challenges these conclusions and raises additional concerns discussed below disputing the

ALJ's analysis of her case.

     *C. Discussion*

          *1.  step two - severe impairment*

     Plaintiff claims the ALJ erred at step two because his findings did not include her

---

     [2]  The ALJ accurately reports Plaintiff's medical history, and I adopt that portion
of his decision for purposes of this report and recommendation.  (R. 47-52).

     [3]  The ALJ also evaluated several of Plaintiff's other impairments: hypertension,
hyperlipidemia, incontinence, gastritis, colds, sinusitis, carpal tunnel, and biopolar
disorder.  He found, however, that there was little to no medical evidence providing that
these impairments lasted over 12 months and either singly or in combination, created
more than minimal limitations on Plaintiff's ability to function (R. 49-50).

severe impairments of incontinence, migraine headaches, dizziness, vertigo, and bipolar disorder of status post-gastric bypass surgery.  Step two, however, requires only that the ALJ determine whether Plaintiff suffers from at least one severe impairment.  *See Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (holding "the finding of any severe impairment . . . whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe" is enough to satisfy step two).  "Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe."  *Heatly v. Comm'r of Soc. Sec.*, 385 F. App'x. 823, 825 (11th Cir. 2010)(citing *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

Here, the ALJ found Plaintiff suffered from several severe impairments including status post CVA, diabetes mellitus, obesity, right foot drop, shoulder problems, angina, and disorders of the spine.  (R. 46).  That finding alone satisfies the ALJ's obligation to determine Plaintiff's severe impairments.  *Id.*  Thus, the ALJ did not err at step two.

### 2.  step three - listing

Plaintiff argues the ALJ erred at step three by failing to consider the combined effect of her obesity in combination with Plaintiff's other impairments to determine if she met or equaled a listing.  Plaintiff's argument here is difficult to decipher.  At step three, if a plaintiff contends that an impairment equals a listed impairment, she must present specific medical findings that meet the various tests listed under the description of the applicable impairment.  *Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987).  If, in the alternative, she contends that she has an impairment which is equal to one of the listed impairments, she

must present medical evidence which describes how the impairment has such an equivalency. *See Bell v. Bowen,* 796 F.2d 1350, 1353 (11th Cir. 1986).

Plaintiff has not identified any evidence that demonstrates her obesity or the symptoms caused thereby would qualify her for a listing, and like the ALJ, I cannot locate any medical evidence to support her theory that any of her impairments met or equaled a listing. Therefore, the ALJ did not err at step three.

### 3. RFC

Next, Plaintiff raises several arguments (in no particular order and spread among several different issued raised by Plaintiff) concerning the ALJ's findings regarding her residual functional capacity. In sum, Plaintiff claims the ALJ failed to include all of Plaintiff's limitations and the combined effects of all of her impairments in her RFC and improperly substituted his judgment for that of the medical experts when determining whether Plaintiff's use of a cane was medically necessary.

### i. RFC and combined effect of impairments

Plaintiff maintains the ALJ failed to consider several of Plaintiff's impairments either singly or in combination to determine her RFC. The impairments she claims the ALJ failed to properly analyze include her obesity, migraine headaches, dizziness, vertigo, incontinence, back and shoulder problems, right foot drop, and diabetes.

At step four, the ALJ must consider all impairments and the extent to which the impairments are consistent with medical evidence when assessing a person's RFC. *See* 20 C.F.R. § 404.1545. The ALJ must also consider any medical opinions given by physicians,

psychologists or other acceptable medical sources, which indicate the nature of a person's impairments. *Id*. The RFC determination is ultimately a decision reserved for the ALJ. 20 C.F.R. § 404.1546(c).

Here, the ALJ took into consideration the medical opinions concerning Plaintiff's impairments to find that Plaintiff could perform light work with the additional limitations that Plaintiff could never claim ladders, ropes, scaffolds, ramps, or stairs; could not be exposed to hazardous machinery or vibrating machinery; could only occasionally reach overhead bilaterally; must work on flat level ground; and cannot operate foot pedals. In making that determination, the ALJ throughly analyzed Plaintiff's medical history and explained his rationale for determining Plaintiff's RFC.

As to Plaintiff's obesity, the ALJ discussed its potential for causing or contributing to other impairments, such as cardiovascular, respiratory, and musculoskeletal impairments but determined (by pointing to specific medical reports in the record) that the evidence did not support any limitations not already addressed in his RFC (R. 57-58). It is true that several of Plaintiff's doctors listed her as obese; however, none identified any obesity related concerns. In fact, the references to Plaintiff's obesity in the medical record appear to be mostly notations in passing. The records that do identify Plaintiff as obese (and those that do not) generally report that any effect of Plaintiff's obesity on her functional limitations were minimal if not absent. Lastly, Plaintiff does not point to any particular obesity-related functional limitations that the ALJ should have considered at step four when evaluating her RFC.

There is also no evidence Plaintiff's migraine headaches, dizziness, vertigo, incontinence, caused any functional limitations. While Plaintiff's medical history reveals physicians have diagnosed these impairments here and there, it is not consistent. Furthermore, the primary physician treating Plaintiff for these impairments, Dr. Harish J. Patel, noted that Plaintiff's motor exams were normal; her memory was good; she had 5/5 strength in extremities; her attention was good; a Brainstem Auditory Evoked Potential was normal; her visual evoked potential was normal; her sensory and cerebellar exam was normal; and a CT scan of her brain was negative (R. 507, 510, 756). As for Plaintiff's incontinence, the ALJ discussed Plaintiff's urologist, Dr. Ketan Kapadia's treatment records, which revealed that Plaintiff showed stress incontinence, underwent a coaptite procedure, and was prescribed medication to treat her symptoms (R. 49). But he found her symptoms improved, and she did well with her medication (*Id.*). These findings are supported by the record. For instance, many records note that Plaintiff had no urinary incontinence (R. 507, 918-29). And Dr. Kapadia's records reveal that after a couple of months of treatment, Plaintiff was doing well on her medications, she no longer used pads, and only leaked when getting up from the toilet (R. 877).

The Court recognizes, like the ALJ, that Plaintiff does have limitations caused by her back and shoulder problems and right foot drop. But the ALJ clearly incorporated these limitations into his RFC by adding further limitations to her restriction to light work. There is evidence in the record that Plaintiff *sometimes* uses a cane and a brace on her leg; has a mildly antalgic gait; cannot walk on her heels and toes or squat, has a partial right foot drop;

and has had some tenderness, pain, weakness, and swelling in her joints, shoulders, back, legs, and knees (R. 8-10, 14-17, 31, 475-76, 528, 541-42, 590, 600, 750, 825, 979-10) (emphasis added).  Nonetheless, there is overwhelming evidence that Plaintiff's limitations are not as severe as alleged.  Several physical exams noted that Plaintiff's range of motion in her knees, back, and legs was within normal limits; her gait was normal; she had 4 out of 5 or 5 out of 5 strength and power in extremities; her joints were normal; her stance was normal; she needed no help getting on and off an exam table and could rise from a chair with the use of her cane; she had no pain or swelling in her legs, no edema, normal muscle strength, normal balance; and she can walk without assistance and/or ambulate independently (R. 476, 507, 510-11, 532, 575-76, 590-91, 649, 675, 687, 697, 749, 780, 806, 824, 825, 831, 868, 909, 915-916).  Objective tests of Plaintiff's spine, knee, and shoulders have all revealed normal results or minimal limitations.  For instance, an MRI of Plaintiff's lumbar and cervical spine showed minimal disc herniation at L5-S1 with disc space narrowing but was otherwise unremarkable (R. 524-25, 930).  X-rays of Plaintiff's knee were negative or revealed no acute radiological findings (R. 533-34, 914).  She had a normal CT of her head and neck (R. 692, 719).  X-rays of Plaintiff's shoulder revealed normal joint space with no fracture or calcification, no shoulder problem that would need intervention, and was otherwise negative (R. 815, 999).  Dr. Kanta C. Shah, who is a Board Certified Physical Medicine Rehabilitation physician, also noted that while she had a right leg brace and used a cane, she had no work restrictions (R. 832).

Lastly, while it is true the ALJ did not specifically discuss Plaintiff's diabetes, the

ALJ is not required to "specifically refer to every piece of evidence in his decision so long as the decision is sufficient to allow th[e] Court to conclude the ALJ considered the claimant's medical condition as a whole." *Brown v. Barnhart*, 158 F. App'x 227, 227 (11th Cir. 2005); *see also Hennes v. Comm'r of Social Security*, 130 F. App'x. 343, 348 (11th Cir. 2005) ("there is no rigid requirement that the ALJ specifically refer to ever piece of evidence in his decision, so long as the ALJ's decision is not a broad rejection which is 'not enough to enable [the court] to conclude that [the ALJ] considered her medical condition as a whole.' "). A review of the ALJ's decision reveals that he considered Plaintiff's medical condition as a whole. Further, although Plaintiff complains she struggles with walking and standing and tends to lose her balance because of her diabetic neuropathy, as discussed above, the medical evidence states the contrary. Plaintiff also testified that her diabetes medications are helpful (R. 74). Therefore, I find the ALJ properly considered all of Plaintiff's impairments to determine her RFC.

### ii. substituting judgment

Plaintiff next contends the ALJ erred by substituting his judgment for that of the medical experts by finding that Plaintiff's cane was not medically necessary and appearing to argue that the ALJ should have included her need for a cane in her RFC.[4] She also claims that the ALJ improperly discounted the opinion of consulting physician, Dr. Robert Shefsky,

---

[4] Plaintiff also claimed the ALJ erred in finding sustained improvement with respect to her urinary incontinence contrary to Plaintiff's physicians' records; however, as discussed above, I find no error in the ALJ's analysis that her urinary incontinence was not as severe as alleged.

who stated that Plaintiff's use of a cane appeared medically necessary at the time and ignored other evidence from her physicians that recognized Plaintiff struggled with walking.

"To find that a hand-held assistive device, such as a cane, is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." *Wright v. Colvin*, No. CV-313-079, 2014 WL 5591058, at *4 (S.D. Ga. 2014) (quoting SSR 96–9p, 1996 WL 374185, at *7) (internal quotations omitted). "Moreover, a prescription or the lack of a prescription for an assistive device is not necessarily dispositive of medical necessity." *See Id.* (citing *Staples v. Astrue*, 329 F. App'x 189, 191 (10th Cir. 2009).

The ALJ discussed Plaintiff's use of a cane to ambulate. He also discussed the State's consultant physician, Dr. Robert Shefsky's, opinion that Plaintiff's cane appeared medically necessary at the time. The ALJ, however, found Dr. Shefsky's opinion vague. He concluded that while the cane may have been necessary for a short period of time as she recovered from her stroke, the record showed she did not always use the cane, she recovered almost full functioning, and she usually had normal gait without the use of an assistive device (R. 55, 57). As support, the ALJ noted Northside Hospital records that revealed Plaintiff had a steady gait and she ambulated independently (R. 57). The ALJ also identified other records throughout his opinion that support his decision that Plaintiff's cane was not medically necessary. For example, as discussed in detail above, he notes that objective

11

testing including Plaintiff's MRIs and x-rays of Plaintiff's back, shoulders, and knees revealed mild or negative results and other medical record that discuss Plaintiff's gait as normal and her strength in extremities as normal.

I further find Plaintiff did not err by discounting Dr. Shefsky's opinion. Consulting physician's opinion's deserves no special weight. *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir.1987) (the opinions of consultative examiners not entitled to deference "because as one-time examiners they were not treating physicians"). Nonetheless, "[t]he opinion of a consultative physician ... is still a medical opinion deserving of consideration along with all of the other evidence." *Hindle v. Astrue*, No. 4:09-cv-422–RH/WCS, 2010 WL 4683996, at *15 (N.D. Fla. Oct. 6, 2010). Moreover, "[i]f the opinion of a consulting physician is consistent with other medical evidence, it is entitled to great weight." *Id.* (*citing Moncrief v. Astrue*, 300 F. App'x 879, 881 (11th Cir.2008)).

Dr. Shefsky's opinion that Plaintiff's use of a cane was medically necessary is not supported by the record, and as discussed above, is refuted by multiple medial records that reveal Plaintiff's abilities are not as limited as she alleged. Further, while many of Plaintiff's physicians noted her use of a cane to ambulate, none indicated that the cane limited Plaintiff's ability to work. In one record, Dr. Shah even noted that while she had a right leg brace and used a cane, she had no work restrictions (R. 832). I find, therefore, the ALJ did not improperly discount Dr. Shefky's opinion. Accordingly, in determining that the cane was not medically required and giving reasons supported by the medical record, the ALJ did not substitute his judgment for that of the other physicians to reject Plaintiff's need for a

12

cane in determining Plaintiff's RFC. Therefore, for these reasons, I find the ALJ's RFC assessment is supported by substantial evidence.

### 4. weight afforded to the physicians of record

Plaintiff next contends the ALJ erred by failing to state the weight afforded to several of Plaintiff's treating physicians: Dr. Patel, Dr. Lawrence Gnage, Dr. Shah, Dr. Tarin Forbes, and Dr. Michele Selsor.  Accordingly, she claims that the ALJ's decision is not supported by substantial evidence.

The ALJ must state with particularity the weight given to different medical opinions. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity  of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  A court must give a treating physician's testimony substantial or considerable weight unless "good cause" is shown to the contrary.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  Good cause for disregarding such opinions "exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004)  (citation omitted).

Here, I find the ALJ's failure to state with particularity the weight given to the

opinions of Dr. Patel, Dr. Gnage, Dr. Shah, Dr. Forbes, and Dr. Selsor harmless error.  *See Diorio v. Heckler,* 721 F.2d 726, 728 (11th Cir. 1983) (finding ALJ error is harmless when it does not impact the determination of disability).  In limited circumstances, the failure of the ALJ to state the weight given to a physician's medical opinion may be harmless error.  *Caldwell v. Barnhart*, 261 F. App'x 188, 191 (11th Cir. 2008).  Plaintiff does not deny that the ALJ referred to and discussed these physicians' medical reports in his opinion.  She also does not provide any explanation for how stating the weight given to any of these physicians would have changed the result or offer any argument as to why the ALJ should or should not have given these physicians' opinion more or less weight.  And while the reports of these physicians do contain some medical opinions, none contradict the ALJ's findings.  Furthermore, it is clear that the ALJ relies upon and credited these physicians' medical reports to render his opinion. *See Caldwell*, 261 F. App'x. at 191 (holding ALJ's failure to discuss weight given to physician constituted harmless error where opinion did not contradict the ALJ's finding); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535-36 (6th Cir. 2001) (holding ALJ's failure to discuss a physician's opinion constituted harmless error where the ALJ had attributed limitations of the claimant that were consistent with the doctor's opinion).  In sum, any failure to state the weight given to Dr. Patel, Dr. Gnage, Dr. Shah, Dr. Forbes, and Dr. Selsor was harmless.

### 5.  step four - relevant work

At step four, Plaintiff claims the ALJ erred by failing to make findings of fact regarding the physical and mental demands of Plaintiff's past work as a cashier and by

14

failing to incorporate any limitations resulting from Plaintiff's right foot drop and obesity in the hypothetical posed to the vocational expert.

### i. findings of fact

SSR 82–62 provides that to find that an individual has the capacity to perform a past relevant job, the ALJ's decision must contain among the findings the following specific findings of fact: 1.) a finding of fact as to the individual's RFC; 2.) a finding of fact as to the physical and mental demands of the past job/occupation; and 3.) a finding of fact that the individual's RFC would permit a return to his or her past job or occupation. *Id.*.

The ALJ met all of those requirements here. After discussing his rationale for determining Plaintiff's RFC, the ALJ, asked the vocational expert ("VE") whether a hypothetical individual with the same age, education, and work history and Plaintiff's RFC could still perform her past relevant work. The VE testified that the hypothetical individual could still perform Plaintiff's past relevant work as a cashier. Relying on the VE's testimony, the ALJ made a specific finding that Plaintiff could perform her past relevant work as a cashier as it is generally performed. These findings are all that is required of the ALJ. *See Cobb v. Comm'r of Soc. Sec.*, No. 6:13-cv-842-ORL-GJK, 2014 WL 4495208, at *3 (M.D. Fla. Sept. 12, 2014) (finding the ALJ complied with the requirement to make findings of fact by relying on the VE's testimony that given the plaintiff's RFC, the plaintiff could perform her past relevant work as it is generally performed).

### ii. hypothetical

The Plaintiff next summarily argues, without support, that the ALJ erred by not

incorporating any limitations resulting from Plaintiff's right foot drop and obesity in the hypothetical posed to the vocational expert.  The ALJ must pose an accurate hypothetical that takes into account all the claimant's impairments.  *Wind v. Barnhart,* 133 F. App'x. 684 (11th Cir. 2005);  *Pendley v. Heckler,* 767 F.2d 1561 (11th Cir. 1985).  The ALJ's hypothetical posed to a vocational expert must comprehensively describe the plaintiff's limitations.  *Id.* at 1563.  Of course, the ALJ is not required to include limitations found not credible, and submits to the expert only those supported by objective evidence of record.  *Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1160-61 (11th Cir. 2004);  *McSwain v. Bowen*, 814 F.2d 617, 620 n.1 (11th Cir. 1987).

Here, the ALJ included those limitation he found credible.  In his hypothetical to the VE he asked whether an individual with the same age, education, and work history and Plaintiff's RFC could perform her past relevant work.  The Court has already found the ALJ's RFC supported by substantial evidence.  Furthermore, the ALJ specifically stated he incorporated the limitations stemming from Plaintiff's obesity and right drop foot in his RFC (R. 58).  Accordingly, I find the ALJ's hypothetical complete and his reliance upon the VE's testimony in response to his questions proper.  *Leonard v. Comm'r of Soc. Sec.*, 409 F. App'x 298, 301 (11th Cir. 2011) (holding an ALJ may rely solely on the VE's testimony to support his finding).

### 6. subjective complaints

Next, Plaintiff contends that the ALJ failed to follow the 11th Circuit pain standard when he failed to adequately articulate reasons for discrediting the Plaintiff's subjective

complaints.  In support, Plaintiff argues the ALJ relied on limited activities of daily living of short duration and inaccurately portrayed her testimony.

The regulations dictate how the Commissioner evaluates pain. The Commissioner must consider all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective evidence and other evidence.  *See* 20 C.F.R. §§ 404.1529 and 416.929.  "Objective evidence" means medical signs shown by medically acceptable clinical diagnostic techniques or laboratory findings.  20 C.F.R. §§ 404.1529.  "Other evidence," as that term is used here, includes evidence from medical sources, medical history, and statements about treatment the claimant has received.  *See* 20 C.F.R. §§ 404.1512(b)(2)-(6) and 416.912(b)(2)-(6).

The Eleventh Circuit pain standard incorporates this scheme by requiring: evidence of an underlying medical condition and either (a) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (b) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.  *Foote v. Chater,* 67 F.3d 1553, 1560-61 (11th Cir. 1995); *Landry v. Heckler,* 782 F.2d 1551, 1553 (11th Cir. 1986).  Indeed, in certain instances, pain alone can be disabling even if unsupported by objective evidence.  *Foote* at 1561.  If the ALJ decides not to credit Plaintiff's testimony, he must articulate explicit and adequate reasons for doing so.  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

In this instance, the ALJ properly found there was no objective medical evidence establishing Plaintiff's alleged symptoms would reasonably expect to cause disabling pain.

17

In applying the pain standard, the ALJ found that Plaintiff's medically determinable impairment could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible (R. 54). The ALJ based this opinion on Plaintiff's own statements regarding her abilities as well as the objective medical evidence and other evidence of record. For example, the ALJ spent five single-spaced pages discussing his reasoning for rejecting Plaintiff's subjective complaints (R. 54-58). Contrary to Plaintiff's assertion, even if the ALJ's review of Plaintiff's daily activities was misinterpreted, the ALJ did not solely rely on her activities in making his credibility determination. Instead, the ALJ pointed to specific instances in the medical records that refuted Plaintiff's testimony.

The ALJ noted Plaintiff's testimony that she ambulates with a cane, gets sharp pain in her neck, has neuropathy in her legs and feet, struggles with standing and walking, has swelling and tingling, can lose balance, has vertigo, migraine headaches, urinary problems, depression, and panic attacks a couple of times a week (R. 73-86); however, the ALJ found that the objective evidence did not support her subjective allegations and that her physical impairments did not limit her beyond her RFC (R. 54). To justify his statement, the ALJ pointed to Plaintiff's daily activities, which include being able to attend to her personal hygiene, sometimes dress herself, supervise and care for her daughters,[5] prepare meals, shop, spend time with others including her boyfriend, watch television, and listen to the radio. *See*

---

[5] Plaintiff claims that the ALJ improperly found the Plaintiff supervised her children because her children are adults; however, the record shows that Plaintiff's children, at the time of onset, were teenagers (R. 344).

*Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984) (The ALJ may consider the claimant's daily activities in evaluating and discrediting complaints of disabling pain). Next, he described how the medical evidence failed to support the severity of pain she alleged. He explained how the records, which the Court previously discussed in the Court's RFC analysis, revealed mostly normal results and negative findings (R. 54-58). Thus, given that the ALJ specifically recognized Plaintiff's complaints and adequately explained his reasons for rejecting those complaints after considering Plaintiff's activities of daily living and the medical record, and substantial evidence supports the ALJ's conclusions, I find the ALJ did not err in his credibility determination. *See Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002)(holding an ALJ made a reasonable decision to reject a plaintiff's subjective testimony by articulating in detail evidence contrary to plaintiff's complaints).

### 7. new evidence

Plaintiff argues the Court should remand her case for consideration of new and material evidence. She claims that on January 8, 2013, she submitted additional evidence received from Directions for Mental Health, which document her continued mental health treatment. According to Plaintiff, the evidence was not available for the ALJ to review despite her efforts to obtain the evidence prior to the ALJ's hearing. Plaintiff maintains this evidence demonstrates that any initial improvements in her mental health were short-term and that the severity of her depression increased.

A claimant can request remand under sentence six "when evidence not presented to the Commissioner at any stage of the administrative process requires further review."

*Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1267 (11th Cir. 2007).  To warrant remand, the Plaintiff must establish: (1) the evidence is new and noncumulative; (2) the evidence is material such that there is a reasonable probability it would change the administrative result; and (3) there was good cause for the failure to submit the evidence at the administrative level.   *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986).   "[N]ew evidence is material, and thus warrants a remand, if 'there is a reasonable possibility that the new evidence would change the administrative outcome.'" *See Flowers v. Comm'r of Soc. Sec. Admin.*, 441 F. App'x 735, 745 (11th Cir. 2011).

Plaintiff has not demonstrated that these records satisfy the requirements for remand. Besides her conclusory statement that these new records support her claims, Plaintiff has provided no explanation why these records constitute material evidence nor has she provided an adequate explanation why there was a failure to submit the evidence before the hearing. Furthermore, these records add nothing to support her claims.  Although the records indicate Plaintiff was treated for mental health issues including depression and anxiety, none comment on any functional limitations. Lastly, these reports were all part of the record reviewed by the appeals council when making their decision (R. 5).  Thus, the Plaintiff is not entitled to remand based on this evidence. *See Ingram*, 496 F.3d at 1269 (finding the district court correctly refused remand because the record showed the evidence presented by plaintiff had already been considered by the appeals council and incorporated into the administrative record; thus, it was not new evidence).

20

*D. Conclusion*

For the foregoing reasons, I find the ALJ's decision is supported by substantial evidence.  Accordingly, it is hereby

RECOMMENDED:

1.    That the Plaintiff's complaint be dismissed and the Commissioner's decision be affirmed.

2.    That the Clerk is directed to enter judgment for the Commissioner.

IT IS SO ORDERED in Tampa, Florida on July 2, 2015.


MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE


**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal.  28 U.S.C. § 636(b)(1).